The case on the docket is Hines v. RMFS. Womack? Wrights? Womack? I'm John Womack, the attorney for... I'm not sure who the heck I am. I work for RMFS, but I don't do plaintiff, defendant, or whatever. I have no idea. We'll call it RFMS. Yeah, that sounds good. But the facts of the case are I don't think anybody knows. This case is the... I've been at this 40 years. Started when I was 12. And you can see... I've never seen a case like this ever in my entire life. It begins with a fight between adjoining property owners who own duck clubs. I thought duck clubs would be something like ducks get together and do stuff socially, I guess. These are duck hunting clubs. And so Hines sues Randy Myers. And then later on RMFS gets into the case without motion, without leave, without anything being done. They just show up as a party. Admittedly, nobody objected. Hines files a claim and says there's a will. And it's either in the right of way or it's on Myers' property. But it shouldn't be used as what my property in dispute is. The initial dispute is about access to property and alleged damages, which never, ever gets raised ever again. There's no pleadings, no arguments. Nothing happens with the claim for damages or the claim for obstruction of access. And somehow the railroad gets in. And the railroad gets in it because Hines sues the railroad, asking the railroad to adjoin RMFS from putting a will maybe on his property, maybe not on his property. I mean, the law is pretty clear that there cannot be summary judgment unless there's no unresolved questions of fact. And there is no facts in this record, period, showing where the will is, what the will is, anything like that at all. There's not even a legal description of the property which the railroad claims is its rightful owner. I mean, this is the most jumbled thing I think I've ever in my life seen. The railroad was sued initially and filed a verified answer swearing under oath, we do not have a will on our property. It's not on our property. Not there. Verified answer. And then later on filed a claim against RMFS in which they adopt the pleadings, adopt the pleadings of Hines, where Hines says, I don't know where it is. It may be on the railroad. It may be someplace else. Remember now, our railroad has already swore that they don't, it's not on our property. It can't be on our property. And then the railroad asked the court to have it taken off of its property. You can look through this record forever. You'll not see a description of the will. You'll not see a location of the will. There's statements in the brief, statements made down below, that there's a survey. There's no survey in this record. There is a topographical drawing. But when I was in law school 100 years or so ago, that was considered hearsay. Hearsay. There's not anybody supporting that drawing. There's not anybody who raised their hand and testified that the property is on the railroad's location. Period. It's not there. And remember, the railroad has continually and repeatedly denied that it's there. The only thing the Haven director is saying that it might be on their property is that their train, some members on their train may have noticed it, but they don't say where they noticed it or where it was or how it was located. Starting with the facts then, there are so many unresolved questions of fact that it would take longer to recite the unresolved question than it is to recite the facts. You don't have a legal description. You don't have a drawing that is not sponsored by a witness. You cannot cross-examine a drawing. There's no testimony there. Rule 191 says affidavits of support must be of the type of evidence you can testify to. The best testimony of this evidence in this case about where the well is located is Randy Myers testified. He's not sure. He thought it was on his property. And then later on he says, yeah, it's on my property. And then remember, the railroad is where it's on the railroad, not on our right-of-way. We don't have it anywhere. So there's a question of fact about where it's located, first of all. Second, there's a question of fact about what it is. Is it above the ground, below the ground? Does it in any way interfere with the railroad's use of its property? And the answer is absolutely not. The railroad didn't know it existed, didn't have any idea it existed, until Hines sued the railroad, asking the railroad to get an injunction against armaments. We'll get to the law in a second. The railroad believed down below, and apparently by the case they decided to believe now, I think they believe in the divine right of railroads. But clearly they believe they have feeding simple interest to the land. And they do not. And they claim that the railroad right-of-way is different than any other type of easement. And it is not. It's just not there at all. Let's talk about the facts first. We don't know, there's nobody saying exactly where it is. Let's start from the beginning. There's no description of the real estate. There's a petition filed in 1905 that makes reference to certain lands. Nobody says, it talks about 20 feet easements or 20 feet uses, it talks about 40 feet, it talks about 80 feet. Nobody says what part of land we're talking about now, where that's existed, where it exists. The top graph drawing this there shows the existing right-of-way, does not depict or locate the initial right-of-way from which the existing right-of-way was apparently drawn. So you don't have a starting place. It doesn't exist. So you don't know where the land is. And then you've got a top graph drawing that shows growing corn over here and a little arrow pointing to a well here. And nobody supports that, nobody justifies the right-of-way. There are facts about, there's a question of fact and law on the location and the legal description. And there are facts about the existence of the well. It exists, but nobody knows where it exists. And the railroad swears under it repeatedly that it's not on its property. The, the, then the law, if you get to that part, the law is very clear that the railroad is not on the field. The railroad relied below on the case which contains that dangerous dick that I referred to in the brief. The pensions, it's the Chicago and Mississippi Railroad being pensioned. And the court said there, I presume the right to the land upon which the railroads are built is not strictly analogous to the easement of the public and highways, leaving the fee in the owner of the soil, but is an absolute ownership in fee for railroad purposes. That was wrong then. It's wrong now. That's never been the law. But even if that were the law in 1854, it wasn't the law when the 1870 Constitution was passed, which said that the railroad's got no right to use it. There's lots of dictum and lots of cases that talk about the railroad's right-of-way and what ownership interest they have. And the words are used carelessly, perhaps because of the nature of the railroad. It would be inconsistent to claim that railroad has a railroad right-of-way, and I can operate a stool on the right-of-way that would interfere with the tracks. But the case law is clear outside of those cases in the brief. And the cases start back in the 1890s and 1900s when you talk about land below and then later on land above. And the cases talking about coal rights say equivocally that the owner of the fee has the rights to the coal and has the right to mine the coal. And then later we talk about the electrical power lines. And then the farmer's grain talks about the grain conveyor. And what the law says is, like it says about – if one has an easement across your land to get to your right-of-way, that's not fees and ownership. But there can't be – the serving interest can't interfere with the use of the driveway. You can't put a fence in. And that's the same theory that applies to railroads. If the railroad has a right-of-way and only a right-of-way, and to the extent that anybody interferes with railroad operations in any way, and I think that's broadly defined, then the railroad has the right to stop that from occurring. And then we get back to the facts. There are no facts here that the railroad knew about the existence of the line. There's no evidence in this record anywhere that it in any way ever, ever, ever, ever stopped the railroad from using the property for railroad purposes. And the case law that talks about coal and above-the-ground usage say the same thing. As long as there's no interference, that's clearly the law. It's not just about right-of-way existence. This doesn't exist. And without evidence of the – I mean, as you sit there today, you might have in your mind's eye a description as well. Is it the wishing well that we see in the storybook with the cap on top of people? We don't know. Is it above the ground? We don't know. Is it below the ground? We don't know. Does it in any way interfere with railroad operations? The answer to that is unequivocal. It does not. It has not. The railroad didn't even know it was there until they were sued. And then after they were sued, so what wasn't on their property? And then said that they noticed it but assumed it was on somebody else's land. There's nothing there. This is a case that should not have been – Hines should not be able to file suit against the railroad, have the railroad file suit against RMFS to remove the well. If there's a violation there, it should have been done on the opposite by the railroad. And the railroad has a duty to describe the real property, which they have not done. It's not here. If you read that petition, it's not anywhere there. They describe it in reference to an existing right-of-way. The existing right-of-way is not described. And they refer – all you have in record is the petition and not the court's – I mean all the court refers to in the order, granting the right-of-way, is the petition itself. It doesn't describe the land at all. It described the right-of-way that existed in 1905, existing tracks in 1905 that are not there at all. But there's no legal description of the land. There's no legal description of the location of the well. And there's clearly no evidence that the well in any way has anything to do with affecting the use of the right-of-way. And they claim – repeated claims in here about the survey. There's no survey in this record. They filed a plat map, and they claim the plat map shows the location. They claim that there's no undisputed facts, even though the railroad itself denies that it's on their property. It cites Randy's testimony that it may or may not be on his property. He doesn't think it is. And then later he says it is on his property. Those are unresolved questions. In fact, this should be resolved. The court had this thing in front of his trial judge forever. He wanted to get rid of it, and he did. But he didn't get rid of it promptly. The court's decision was wrong. It should be reversed, and it should be reversed and remanded with directions to deny the motion because the ownership interest that the railroad has is a fee. It's not fee. It's an issue. And there's nothing in the record to indicate that there's any violation of that issue, anything done that can stop the railroad from using the property for railroad purposes. Thank you. We have an opportunity for rebuttal. Good morning, Your Honor. May it please the court, my name is Kurt Rice, and I represent Union Pacific in this appeal. The history of this case is long. It dates back to when Mr. Hines filed the original complaint in November of 2001, so the case is now over a decade old. In its truest sense, it is a feud between two competing duck hunting clubs. My client, Union Pacific, gets drawn into this in 2007 when the parties to the lawsuit determined that the well and pump they've been fighting about is on our property. Can I ask you, is Mr. Weinberg correct that there's nothing in the record to say whether this well is above the ground, below the ground, there's no description of the land? No. I mean, it's all a matter of record. The court found it to be a matter of record, and it's in the appellate record. Page 676 is the petition and the order that goes into a legal description of the right-of-way. It's the condemnation order that created the right-of-way that exists, and it contains a lengthy legal description right in it. The second amendment complaint that was filed by plaintiffs contains the same legal description. It's a red herring. The legal description's there. We know exactly what it is. We'll deal with it. The next question is, Mr. Womack keeps saying there's no servant. In the record at page 675 is a document that Mr. Womack's client prepared prior to counsel. And what does it say? Typographic servant. He says it's not a missile because it's a hearsay document. There was never any objection made at the trial court level. And as we go through this, you have to have it gets complicated not because the issues are complicated but because the appeal issues are complicated. You have to keep track of what was raised at the trial court and what hasn't been abandoned in this appeal, therefore abandoned as an issue. And you have to keep track of what was never raised at the trial court and is raised on appeal and, therefore, waived. And one of the things that was waived is any issue about this typographical servant. This issue was raised that it's not really a servant, even though it says it in bold print at the top. And it's his client's own document, which they produced. And even though it shows the location of the well on the survey on our right, forget about all that. They never raised any of this at the trial court level. And this is what the court relied on. And we cite case after case that say, if you're going to raise a hearsay, it's to a document. You have to raise it at the trial court level or else it's waived on appeal. And that really is – I'll go through this, but that really is the scorecard that you have to watch as you go through here. What was raised at the trial court level as an objection, and what was raised at the trial court level as an objection to this entire proceeding, was that Union Pacific's claim, as asserted against RMFS, was a counterclaim, and therefore a misnomer, and therefore improper. In fact, that's wrong because the Code of Civil Procedure at 614 says, and I think the court is well aware of this, that cross-claims raised by defendants shall be designated as improper. So they're wrong about that, but it doesn't matter. That issue, that was the primary issue that was raised at the trial court level. It's never been raised at the appellate court level. At the appellate court level, they raised for the first time that nine years of litigation is nullity because the First Amendment claim was filed out of time. The issue is waived and was never raised at the trial court level in the first place, but it's simply wrong, an underlying law anyway, because again, the Code of Civil Procedure tells us the answer, and at 616 it says that is a directory, not a mandatory provision, and it can be waived by the parties if they simply proceed, which is exactly what happened for nine years after this. So again, you really have to keep track of what's going on here and keep your eye on the ball. So like the plaintiff in this case, when we got drawn into this, we filed a cause of action, a properly called a counterclaim, against RMFS seeking injectment and injunction. Please get the well off our property. Discovery took place. Summary judgment motions were filed by both plaintiff and Union Pacific, and a hearing occurred in February of 2010, which RMFS did not attend. An order was entered on March 31, 2010, granting a summary judgment. RMFS then objected, started the whole process over again, and we had a re-hearing on February 4, 2011, which RMFS did attend that time, and at that hearing, RMFS counsel agreed as part of the record that Discovery had been conducted, concluded, and amendments that necessary had been submitted. The motions were ordered, and Judge Clark enters a thoughtful and considered nine-page order on February 18, 2011, that goes through the undisputed facts, which are not complicated, and that is that RMFS or its agents installed a well or pump. There's no issues with that. That the well and pump are not located on the property of RMFS, even their own records that Mr. Lomax already indicated says he doesn't know where the pump is. That the well and pump were on property designated as a right-of-way for Missouri Pacific, and we submitted a survey that is not our survey. It's RMFS's survey that clearly shows the well right on our right-of-way, and it's right in the record. No challenges to hearsay, anything. And that the Union Pacific acquired this interest by virtue of a 1909 order that called for condemnation of this in a right-of-way. It is in the record at 676. So the court found specifically no evidence of a record to suggest a question of fact. After summary judgment was entered, there was a two-page post-trial motion that didn't cite any case law whatsoever, and that was denied also. But this personal feud continues, and we're here in the appellate court. And what I said before applies here. Now you have to really keep track of what was objected to at the trial court, which was very little in hyper-technical issues, most of which have been abandoned in this appeal, not even raised, and what is now objected to on appeal, most of which was never raised in the trial court. So the first thing they raised at the trial court, in fact, their principal argument, was this counterclaim designation, which they're simply wrong on. 614 says it's a cross-claim in Illinois. It's unusual, but it's the law. It says it right in 614. You call it a counterclaim, which is what we did. It's a complete red herring anyway. The trial court said so. It's not even raised on this appeal. The next thing they said was that because the plaintiff, Mr. Hines, filed his first amendment complaint late that the next nine years of litigation is a nullity. Again, it's simply not right on a substantive basis because we know under 616 the provision is directory, not mandatory, and if the parties proceed, which is exactly what happened, that issue is waived. But it doesn't matter. Again, here, because most notably, this wasn't raised at the trial court level. So now we get to the survey. Mr. Womack refuses to call this a survey, even though it says survey, even though the home client submitted it as a survey. But this was not raised at the trial court level. He calls it a hearsay document. This was not raised at the trial court level. The personal feud continues. Now faced with no questions of fact, we go on to talk about alternative pleadings, that somehow the parties cannot win some adjustment because the plaintiff fled these claims in the alternative. Cites absolutely no case law for that position and, in fact, none exists. So that goes right through. Talks about verified answer. The verified answer was filed initially in the case. Discovery ensued. The parties took positions. They filed pleadings. They set out what they relied on. There was no issue raised as to this either at the trial court level. Now we're left with challenging the law. And we have law from 1854. And it's held on the Supreme Court. I think almost every case we cite is on the Supreme Court. And it's held that a railroad liability requires exclusive occupancy. That's 1854. 1909. The right acquired by the petitioner, a railroad, is practically exclusive. The naked title which is left for all practical purposes has no value. 1944. Another Supreme Court case. An easement required by the railroad coming in an eminent domain proceeding for rivalry purposes gives the railroad the right to exclusive possession of the rivalry. The only cases that RMFS has cited, the only cases they can cite, are cases involving utilities that have some own competing rivalry or ownership interest of their own. And the case they cited that jumps out most notably is an electric company that wanted to put wires over the top of the railroad's rivalry. There was a suit over that. And they juxtaposed or compared these two competing rivalries and let the electric company do that. But it was because they had an existing right. You have to play from the case. Yes, sir. Yes, sir. The big flashing light in this case on this issue, the law, the false premise on which their entire legal argument is made is that RMFS somehow has a right or an interest in putting a well off their property on the railroad's rivalry or on somebody else's field. The people that had the feet of this were wrong then. RMFS has no interest. They're trespassing. So the idea that they can trespass without bothering anybody and that's okay is a nonstarter. They're trespassing. They built a well on somebody else's property. They're trespassing, whether it's above ground, whether it's below ground, whether it's partly underground, whether it's partly overground. It doesn't matter. They're trespassing. Now, the fact is an answer to your interrogatory that says that the railroad could see the well from its tracks but presume that the party had built it on its own property. That was the answer, and it's a correct one. The reality is it doesn't matter whether it's above or below the ground. They're trespassing. And they have no, there's no, they're not a utility. They have no other competing interest that allows them to be on our property, and they're simply trespassing. So they don't have any right to be over, on, at, or under our property. They're a trespasser, and that's why this ultimately is very simple. The well is on our property. The well, they have no interest that allows them to do that. It doesn't matter in the context of this whether it's above or below ground. They need to get it off. Aren't they contending that you've admitted that the well is not on your property? Well, we, I would say it doesn't matter, but to answer your question, Your Honor, we answered an interrogatory that said we could see it from the tracks, and we presumed it was built on property. The implication would be if we could see it, it's not underground. It doesn't matter. They're still trespassing. I mean, it's another red herring here. This case has been pending since 2001. I would respectfully suggest that it should be put to an end. The trial court order, and the judge spent a lot of time on this, and it's a well-thought-out order, mercifully and correctly decided this and put it to an end. And, Your Honors, I would ask you to please not encourage this behavior and let this feud continue. Anyone has any questions? Thank you, Counsel. You're basically saying whatever the description of the well, you don't have the fee. You haven't existed right away. It's irrelevant that it's over 100 years old and you're exercising it. You want the well law? Yes. And it is affecting our rivalry in that I'm here. I got sued. I have a rivalry that I'm trying to run a railroad on, and I got drawn into a gut-cleaning feud because somebody built, whether it's above ground, below ground, it doesn't make any difference to me. Somebody built a well partially on our property. My rivalry has been affected. I got drugged into trial court for four years. I'm drugged into the appellate court now. And it suggests that it's not bothering us. I'm sure the railroad would be just as happy if I wasn't here and they weren't paying me. But it is affecting our rivalry. They built a well on our rivalry. But to answer your question directly, you're exactly right, Your Honor. It is a rivalry, and under the law that is applicable to railroads, it's an exclusive rivalry. Thank you, sir. Mr. Plowman, do you have a rebuttal? Excuse me. I didn't hear your question that you asked counsel. Oh, I'm sorry. Not your fault. I was basically asking to make sure I understood his position, that regardless of the well being above ground, below ground, visible or not, they don't have the fee. They've got a right of way. The fact that it's 100 years old is not relevant. And their position essentially is they are asserting their right of way. And if that's their position, he said yes, basically, that's their position. Thank you very much. It was a clarification question. I appreciate you responding. Counsel talked about waiver and said we waived this, we waived that. We objected to her survey below. We objected in writing. We objected to Hines' affidavit, which was pure nonsense. And I'm confused about the issue of judicially binding conditions. You cannot, under the law of Illinois, take two exactly opposite positions in the same case. You can file in the alternative. There's no alternative claimants here. You can't swear under oath that the car was red and then swear under oath that the car was purple. Maybe you can, but those might not qualify as judicially binding. But you can't take two positions. In this case, you can't take a position that it's not on our property and never was on our property and put that under oath. That is, when you verify a complaint, you're swearing. You're swearing under oath. And the purpose for judicially binding admissions and stopping people from reneging on them is to avoid perjury, to avoid saying something that's false and saying something that's false. You cannot, under Illinois law, take two positions on the same matter in the same case. And there's a verified answer saying that it's not on our property. I don't know how you get around that. They are bound by that. They can't escape it. Does it make any difference in that position whether they claim to have a right of way but not the fee? And so the position of, quote, it's our property, how does that figure into that? They're not claiming. They're claiming whatever ownership interest they have. They're claiming that this will is not on their property, period. And that's exactly what the complaint says. That's exactly what the verification is. The guy signs it. I'm the vice president. I know this. I know that. I know it's not on our property. You can't get any more distinct than that. And that's a binding judicial admission. And the claim about the state, I've tried a couple of lawsuits. I know a little bit about hearsay. There is no testimony in this record at all about the location of the weapon. There's a reference to a document that's entitled. It's entitled. It's entitled Topographic Survey. There's no indication it's been prepared to serve it. There's no testimony about the prepare of the survey that this is the location of the property. And counsel says, well, we have a legal description. The legal description of the property is contained in the petition. And it says the strip of land 30 feet wide line east of and adjoining the present right. It goes on. That's on page 679. It goes on 670, 680. But it always refers to the previous right, which is not described anywhere in these places. The petition that was filed was referenced, but it's not. It's not. And there's no description of the first right away or how this is compared to the second. I just talked about something being 100 years old. I don't know whether they've been there for 100 years or not. I'm sure they have more than that, but there's still no description of the record. Of the land that we're talking about. And what the judge says in his order, what he relies on, is this. This is a, it gets confusing because counsel refers to admissions made by the plaintiff. The plaintiff is Hines. He's not here. Any admission Hines made cannot possibly be binding on RMFS. It's impossible. But here's what the judge says. It says RMFS agent installed the well in pump edition. The well and pump are not located on property of RMFS. The well and pump were placed on property designated as Preserve Pacific Railroad. But it doesn't, that portion of the order doesn't describe where the well is located. It says someplace on the right of the way. So there's no, there's a question of the fact that's clearly there. And then you get to the second issue. Counsel said repeatedly, repeatedly, repeatedly that the case law says it's exclusive. And that is entirely false. There are two cases that talk about the right. In this case, we're talking about water. The legal issue here, does Randy have the right to get to the water that's underneath the railroad? And the comparison to that would be, does he have the right to get to the coal? And the law is clear. Two or three cases on point. Three cases on point. Saying, yep, the coal belonged to the Serbian Indians, to the Serbian owners. That the railroad has the right to use the property. Nobody else can use it if it interferes with the railroad. But it's not exclusive. There are three cases that talk about coal. There are two cases that talk about above the ground. All of those cases say that the property is not exclusive. That the issue has to be, is the railroad in some way, in some way railroad operations effective? Counsel's claim that they have to defend this lawsuit. It doesn't have anything to do, I mean that's the most ridiculous argument I've heard yet in quite some time. The fact that they're in court, the case could have been, should have been handled by them. They should have got out. Hines had no right to file a suit against them to have them enjoin us. That's the way the case should have been resolved. But there's nothing, nothing in this record now that resolves the question. Thank you. Counsel, both of you for your reasonable argument. The matter under review.